NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2017-0159

SLANIA ENTERPRISES, INC.

v.

APPLEDORE MEDICAL GROUP, INC.

Argued: November 16, 2017
Opinion Issued: May 1, 2018

Lynne C. Christie, of Durham, by brief and orally, for the plaintiff.

Nixon Peabody LLP, of Manchester (Kevin M. Fitzgerald on the brief and orally), for the defendant.

BASSETT, J. The plaintiff, Slania Enterprises, Inc. (Slania), appeals a decision by the Superior Court (Howard, J.) granting the motion of the defendant, Appledore Medical Group, Inc. (Appledore), to dismiss as time-barred a petition to recover damages stemming from an alleged breach of a commercial real estate lease. We reverse in part, vacate in part, and remand.

The trial court recited, or the plaintiff alleged, the following facts. In October 2012, Slania, as the lessor, and Appledore, as the lessee, entered into a commercial real estate lease for an initial fixed term that ended on April 30, 2015. However, Appledore never took possession of the premises.

Appledore paid rent due through January 2013, but then stopped doing so. In March 2013, Appledore communicated to Slania that it wished to terminate the lease. On April 12, 2013, Slania notified Appledore that it was in default on its rental payments. Appledore did not pay. On April 22, 2013, at the expiration of the 10-day cure period, Slania notified Appledore that, pursuant to Section 13.1(b) of the lease, it was electing, as its remedy upon default, to "keep the lease in effect and recover rent and other charges due [from Appledore] less the amount [Slania] may recover by re[-]letting the premises." Slania re-let the premises from February 2015 through the end of the initial term of the lease, April 2015, for a lesser monthly amount.

On April 29, 2016, Slania filed a breach of contract action against Appledore for $82,527.87 in damages, which included rent, late fees, and utility costs due from May 2013 through April 2015. Appledore moved to dismiss, asserting that because the lease was breached no later than April 22, 2013, the claim was barred by the three-year statute of limitations under RSA 508:4, I (2010). Slania objected, arguing that the lease was an installment contract, and, therefore, the statute of limitations did not bar a suit to recover payments due within three years of the date the complaint was filed.

The trial court granted Appledore's motion to dismiss, ruling that, because "a real estate lease of the type involved here is not an installment contract as that term is contemplated in the statute of limitations context," the so-called "installment contract rule," under which the statute of limitations runs only against each installment when it becomes due, did not apply. See General Theraphysical, Inc. v. Dupuis, 118 N.H. 277, 279 (1978). Thus, the trial court concluded, the breach in this case occurred "no later than April 22, 2013, the date upon which Appledore's right to cure the claimed default expired." The trial court also ruled that, even if the installment contract rule could apply to a commercial real estate lease, it did not apply to the parties' lease because Appledore never took possession of the property.

In addition, the trial court decided that, although the lease "provided Slania with the choice to continue the Lease and calculate damages in a certain manner as a remedy to Appledore's breach[,] . . . Slania's unilateral choice of remedies cannot serve to extend the time in which Appledore's initial breach occurred." The trial court concluded that when Appledore "failed to cure the default by April 22, 2013, the cause of action had arisen for purposes of the statute of limitations." The trial court denied Slania's motion for reconsideration. This appeal followed.

In reviewing the trial court's grant of a motion to dismiss, our standard of review is whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. Plaisted v. LaBrie, 165 N.H. 194, 195 (2013). We assume that the plaintiff's pleadings are true

and construe all reasonable inferences in the light most favorable to the plaintiff.  Id.  We then engage in a threshold inquiry that tests the facts alleged by the plaintiff against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss.  Id.

Slania first argues that the trial court erred when it decided that commercial real estate leases cannot be installment contracts for purposes of the installment contract rule.  We agree with Slania: a commercial real estate lease can be an installment contract.  An installment contract is "[a] contract requiring or authorizing the delivery of goods in separate lots, or payments in separate increments, to be separately accepted."  Black's Law Dictionary 395 (10th ed. 2014).  So too is a lease, in which a month's use of the lessor's property is compensated by a monthly rent payment.  Thus, a commercial real estate lease that calls for separate payments, separately accepted, is an installment contract.

Slania further argues that because a commercial real estate lease is an installment contract, the installment contract rule applies.  Under New Hampshire law, "when an obligation is to be paid in installments[,] the statute of limitations runs only against each installment as it becomes due even though the creditor has the option to declare the whole sum due on default of an installment, unless he exercises that option."  General Theraphysical, Inc., 118 N.H. at 279.  "In essence," the installment contract "rule treats each missed or otherwise deficient payment as an independent breach of contract subject to its own limitations period."  Pierce v. Metropolitan Life Ins. Co., 307 F. Supp. 2d 325, 328-29 (D.N.H. 2004).  "Accordingly, a party bringing an action on an installment contract can recover only for those payments relating to periods for which the applicable statute of limitations has not expired at the time plaintiff files suit."  Id. (quotation, brackets, and ellipsis omitted).

Appledore counters that the installment contract rule does not apply to commercial real estate leases because a lease does not convey a final possessory interest.  Appledore cites no support for this proposition.  Nor have we found any.  Indeed, we have applied the installment contract rule to contracts for the lease of goods, which similarly do not deliver a "final possessory interest."  See General Theraphysical, Inc., 118 N.H. at 278-79.  Moreover, courts in other jurisdictions have ruled that the installment contract rule can apply to real estate leases.  See Lakeview Management, Inc. v. Care Realty, LLC, Civil No. 07-cv-303-+SM, 2010 WL 346811, at *2 (D.N.H. Jan. 22, 2010) (applying the installment contract rule to a real estate lease and observing that this court has not expressly excepted real estate leases from that rule); Lindner v. Meadow Gold Dairies, Inc., 515 F. Supp. 2d 1141, 1151 (D. Haw. 2007) (applying Hawaiian common law); Holiday Furniture Factory Out. Corp. v. DOC, 852 So. 2d 926, 928 (Fla. Dist. Ct. App. 2003); Annotation,

<u>When Statute of Limitations begins to run against action to recover upon contract payable in instalments</u>, 82 A.L.R. 316 (1933) (collecting cases that apply the installment contract rule to many types of contracts including real estate leases).

Appledore next contends that the installment contract rule does not apply to real estate leases because leases are regulated by statute. <u>See</u> RSA ch. 540 (2007 & Supp. 2017); RSA ch. 540-A (2007 & Supp. 2017). The installment contract rule is a common law rule. <u>See</u> <u>General Theraphysical, Inc.</u>, 118 N.H. at 279. "Generally, we will not construe a statute as abrogating the common law unless the statute clearly expresses that intent." <u>Petition of Willeke</u>, 169 N.H. 802, 806 (2017) (quotation, brackets, and ellipsis omitted). Nothing in RSA chapters 540 and 540-A addresses the statute of limitations for a breach of contract action based upon a lease. Nor does the plain language of RSA 508:4, I, which sets forth a three-year statute of limitations for "all personal actions, except actions for slander or libel," evince clear legislative intent to abrogate the installment contract rule. Accordingly, we conclude that commercial real estate leases do not fall outside the bounds of the installment contract rule, and we reverse the trial court's contrary ruling.

Alternatively, Appledore asserts that, "even if the [c]ourt were to conclude the installment [contract] rule generally applies to real estate leases," the rule does not apply here because: (1) Slania's claim is based upon a "single distinct event which has ill effects that continue over time," <u>McNamara v. City of Nashua</u>, 629 F.3d 92, 96 (1st Cir. 2011) (quotation omitted); and (2) Appledore never took possession of the premises.

To support the proposition that Slania's claim is time-barred because it is based upon a single, discrete event, Appledore relies upon <u>McNamara</u> and upon a non-precedential order of this court. <u>See</u> <u>id</u>.; <u>see also</u> <u>Gage v. State</u>, Case No. 2013-0362, 2014 WL 11656372, at *5 (N.H. Jan. 29, 2014) (3JX Order). However, both cases are distinguishable. In <u>McNamara</u>, the plaintiff sued Nashua "for harm done in inducing [a] settlement and for . . . misreporting . . . matters to the [New Hampshire Retirement System]." <u>McNamara</u>, 629 F.3d at 96. The court specifically distinguished a lawsuit based upon that kind of single, discrete event from a lawsuit that the plaintiff could have brought if Nashua had been obligated "to make periodic payments to [him] and successively underpaid him." <u>Id</u>. In the latter case, the court explained, "a claim might arise each time a payment was made and a suit could be brought within the limitations period on any underpayment." <u>Id</u>.

In <u>Gage</u>, we stated, in dicta, that the petitioner's lawsuit was "not analogous to a claim for breach of an installment contract" because she had "not sued the New Hampshire judicial retirement plan for individual underpayments of pension benefits," but rather had "claimed that the State

4

failed to properly administer" the plan, thereby impairing her rights under the applicable statute. Gage, 2014 WL 11656372, at *5.

Here, by contrast, Slania's claim is based upon Appledore's failure to pay monthly rent. Appledore's failure to pay is not a "single event," but rather a re-occurring contractual breach. See Pierce, 307 F. Supp. 2d at 331-32 (observing that "[c]ourts have routinely treated the failure to make payments according to an agreed-upon schedule as the breach of an installment contract"). The mere fact that Appledore ceased paying rent as of a certain date, or that it notified Slania of its intent not to pay rent as of a certain date, does not mean that Appledore's failure to pay constitutes a single, discrete event. As the federal district court explained in Pierce, "nearly every action seeking to recover on a contract calling for periodic performances has its genesis at the point where the defendant stops rendering those performances through the first of what turns out to be a series of discontinued payments." Id. at 331-32. If the "first missed or otherwise deficient payment triggered the statute of limitations as to all future payments, the installment contract rule would never apply." Id. at 332. Such a result "cannot be squared with existing New Hampshire law." Id.; see General Theraphysical, Inc., 118 N.H. at 279.

Appledore next asserts that the installment contract rule does not apply to this claim because Appledore never took possession of the property. Appledore cites no authority for the proposition that a tenant must take possession in order for the installment contract rule to apply to a commercial real estate lease. We fail to see how the fact that Appledore did not take possession of the premises is legally relevant. See Holiday Furniture Factory Out. Corp., 852 So. 2d at 928 (observing that, although none of the court's prior cases "involved a tenant who had never taken possession of the property . . . , we see no need to limit the general [installment contract] rule to lessees who have been in possession for some period").

Applying the installment contract rule in this case would mean that Slania's breach of contract claim against Appledore is timely, but that Slania may recover only those damages that accrued within three years of when this lawsuit was filed. See Pierce, 307 F. Supp. 2d at 328-29. However, the trial court stated that "[e]ven if our Supreme Court were to apply the installment contract rule to real estate leases, this court would nevertheless conclude that the action is barred under the circumstances of this case." It reasoned:

> Appledore did not take possession of the property and clearly indicated its intent not to honor the lease in its communication on March 28, 2013. Further, after Slania gave notice of the breach on April 12, 2013, Appledore did not cure the default within the 10-day period. Unequivocally, this contract action arose no later than

5

April 22, 2013, and needed to be filed within three years of that date.  Since it was not, the claim is time-barred.

Slania argues that, because it exercised its contractual right to "keep this Lease in effect and recover monthly" from Appledore, the lease was neither completely breached nor terminated on April 22, 2013.  (Quotation omitted.) Accordingly, Slania asserts that its suit is timely because the lease is an installment contract and, therefore, "each month that the rent was not paid was a separate breach of the lease triggering a new three year statute of limitations for each breach."

Appledore counters that the trial court found that Appledore materially breached the lease on or before April 22, 2013, and, therefore, that the material breach triggered the running of the statute of limitations.  At oral argument, Appledore asserted that the trial court found that Appledore had unequivocally repudiated the lease on or before April 22, 2013.  Appledore further argued that repudiation "take[s] [this case] outside of the installment [rule] discussion altogether," presumably implying that Slania's lawsuit is untimely.

As an initial matter, Appledore also argues that we should affirm because Slania did not develop a sufficient argument in its appellate brief that the trial court's determination of when breach occurred was in error.  We disagree and turn to the merits of the parties' arguments.

Under New Hampshire law, "[i]n instances of anticipatory breach, the non-breaching party has the option to treat the repudiation as an immediate breach and maintain an action at once for damages."  LeTarte v. West Side Dev. Group, 151 N.H. 291, 294 (2004).  "An anticipatory breach of a contract occurs when a promising party repudiates his obligations either through words or by voluntarily disabling himself from performing them before the time for performance."  Id.

In LeTarte, we held that the defendant's "repeated and unjustified failure to make any of the first nineteen payments for more than three years" constituted a "total anticipatory breach" of the parties' installment contract, and allowed the plaintiff to recover damages for such "total . . . breach."  Id. at 295.  In a prior case, also involving an installment contract, we found that the defendants' failure to make payments "after the initial installments" constituted a "material failure to perform" and, therefore, a "total breach" of the contract. Id. at 294, 295; see Hoyt v. Horst, 105 N.H. 380, 389 (1964).

However, this court has yet to address whether, if the non-breaching party elects not to sue within three years of the other party's anticipatory breach or repudiation, the non-breaching party's lawsuit is barred by the statute of limitations.  Jurisdictions that have decided this issue are divided.

6

Compare Bioveris Corp. v. Meso Scale Diagnostics, LLC, C.A. No. 8692-VCMR, 2017 WL 5035530, at *10 (Del. Ch. Nov. 2, 2017) (holding that letter with accompanying payment "was a present breach accompanied by an anticipatory repudiation, constituting a total breach" of the contract and that the installment contract's total breach triggered the applicable statute of limitations), with Keefe Co. v. Americable Intern., Inc., 755 A.2d 469, 477 (D.C. 2000) (holding that the installment contract rule applied and explaining that "nonpayment of one installment triggers no requirement to sue on the totality of the debt").

In rejecting Slania's assertion that it could elect to keep the lease in place and sue for breaches that occurred within three years of the date it filed suit, the trial court did not mention anticipatory repudiation or material breach. This case raises issues of first impression regarding the interplay of the installment contract rule, a party's election of contractual remedies, and anticipatory repudiation or anticipatory breach. It does not appear that these issues were fully explored by the trial court, and jurisdictions are divided on how these issues affect when the statute of limitations accrues. Accordingly, we vacate the trial court's ruling with respect to Slania's argument that, under the terms of the lease, it could keep the lease in effect and bring an action to recover for breaches that occurred no more than three years before the date it filed this suit. We remand for such further proceedings, consistent with this opinion, as the trial court may deem necessary.

Reversed in part; vacated in part; and remanded.

LYNN, C.J., and HICKS and HANTZ MARCONI, JJ., concurred; DALIANIS, C.J., retired, specially assigned under RSA 490:3, concurred.